709 S.E.2d 750

**Edward L. SIMS, II, Petitioner Below, Appellee**

**v.**

**Joe E. MILLER, Commissioner, West Virginia Division of Motor Vehicles, Respondent Below, Appellant.**

No. 35673.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 2011.

Decided May 13, 2011.

Darrell V. McGraw, Jr., Attorney General,
Janet James, Assistant Attorney General,
Charleston, WV, Attorneys for the Appellant.

Gregory W. Sproles, Breckinridge, Davis, Sproles & Chapman, PLLC, Summersville, WV, Attorney for the Appellee.

DAVIS, Justice:

In this case, Joe E. Miller, Commissioner of the West Virginia Division of Motor Vehicles (hereinafter referred to as "Commissioner Miller"), respondent below and appellant, appeals an order of the Circuit Court of Nicholas County that reversed Commissioner Miller's "Remand Final Order," which revoked the driver's license of Mr. Edward L. Sims, II (hereinafter referred to as "Mr. Sims"), petitioner below and appellee, following Mr. Sims' arrest for Driving under the Influence of Alcohol. On appeal, Commissioner Miller assigns error to the circuit court's conclusions that Commissioner Miller: (1) improperly relied upon a secondary chemical test of the breath, the Intoximeter Test, that was administered more than two hours after Mr. Sims last drove a motor vehicle; (2) failed to reconcile conflicting testimonial evidence in accord with *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996), and *Choma v. West Virginia Division of Motor Vehicles,* 210 W.Va. 256, 557 S.E.2d 310 (2001); (3) failed to give substantial weight to the dismissal of the criminal case against Mr. Sims in accordance with *Choma;* and (4) failed to apply an adverse inference against the testimony of the arresting officer in light of the officer's failure to introduce a videotape recording of the officer administering Mr. Sims' Intoximeter Test.[1] Because we agree with Commissioner Miller that the circuit court's conclusions were in error, we reverse the order of the circuit court and reinstate Commissioner Miller's order revoking Mr. Sims' license to operate a motor vehicle.

1. Commissioner Miller raised a fifth issue on appeal; however, we find it unnecessary to address the issue to resolve the instant case. *See* note 17, *infra.*

2. According to the "D.U.I. Information Sheet" completed by Deputy Bailey, Mr. Sims confessed that he had been driving the vehicle.

3. Deputy Bailey administered a horizontal gaze nystagmus test, a walk and turn test, and a one-leg-stand test.

4. The version of this code section that was in effect at the time of Mr. Sims' arrest for DUI was

## I.

## FACTUAL AND PROCEDURAL HISTORY

On November 23, 2007, Deputy J.B. Bailey of the Nicholas County Sheriff's Department responded to a single vehicle accident on Levisay Road in Nettie, Nicholas County, West Virginia. When Deputy Bailey arrived at the scene, he found a vehicle on its top in front of a residence with no driver present. As Deputy Bailey began to look around the vehicle, the driver, Mr. Sims, exited the nearby residence.[2] Deputy Bailey spoke with Mr. Sims and noticed the odor of alcohol. In addition, he observed that Mr. Sims staggered while walking; was unsteady on his feet; had slow, slurred speech; and had glassy eyes. Consequently, Deputy Bailey administered three field sobriety tests,[3] which Mr. Sims failed. Deputy Bailey also administered a preliminary breath test, which Mr. Sims also failed. At approximately 12:19 a.m., Mr. Sims was placed under arrest for the offense of Driving Under the Influence of Alcohol (hereinafter referred to as "DUI") in violation of W. Va.Code § 17C–5–2 (2010) (Supp.2010).[4] Mr. Sims was transported to the Nicholas County Courthouse where a secondary chemical test of the breath, an Intoximeter Test, was administered. The results of the test showed that Mr. Sims had a blood alcohol content of .091.[5] Deputy Bailey completed a DUI Information Sheet. Mr. Sims was then transported to Summersville Memorial Hospital, upon his own request, so that a blood test could be administered. Finally, Mr. Sims was taken to the Central Regional Jail.

enacted in 2007. *See* W. Va.Code § 17C–5–2 (2007) (Supp.2007). However, the subsequent changes to this section of the West Virginia Code are not relevant to the issues addressed in this opinion. Accordingly, throughout this opinion, we will refer to the most recent version of W. Va.Code § 17C–5–2.

5. Operating a vehicle with a concentration of eight hundredths of one percent (.08) or more of alcohol in the blood constitutes DUI. *See* W. Va.Code § 17C–5–2(d).

Mr. Sims was charged with DUI; however the criminal case was subsequently dismissed by the Nicholas County Magistrate Court pursuant to a plea agreement by which Mr. Sims agreed to plead guilty to separate charges.[6]

Commissioner Miller issued an initial order of revocation on December 18, 2007, which revoked Mr. Sims' license to operate a motor vehicle for a period of six months. Mr. Sims timely requested a hearing, which was held on August 6, 2008. Following the hearing, by final order effective November 10, 2008, Commissioner Miller upheld his initial order of revocation. Mr. Sims appealed to the Circuit Court of Nicholas County. During the pendency of the circuit court proceedings, the parties agreed that the matter should be remanded to Commissioner Miller in order to comply with the mandates of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), and *Choma v. West Virginia Division of Motor Vehicles*, 210 W.Va. 256, 557 S.E.2d 310 (2001). Accordingly, the circuit court entered an order remanding the action and staying the revocation of Mr. Sims' driver's license. Following the remand, Commissioner Miller entered a "Remand Final Order," effective August 3, 2009, in which he again affirmed the six-month revocation of Mr. Sims' driver's license. Mr. Sims appealed the "Remand Final Order" to the circuit court. By order entered December 30, 2009, the circuit court reversed Commissioner Miller's order and reinstated Mr. Sims' license and driving privileges. This appeal followed.

## II.

### STANDARD OF REVIEW

■■■■ This Court has previously established the standards for our review of a circuit court's order deciding an administrative appeal as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of

fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518. In addition, the *Muscatell* Court held that,

> [i]n cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*.

Syl. pt. 2, *id.* With due consideration for these standards, we address the issues herein raised.

## III.

### DISCUSSION

In this appeal, Commissioner Miller has asserted several errors. We will address each of these alleged errors separately.

#### A. Intoximeter Test

With regard to the Intoximeter test, which is a secondary chemical test of the breath, the circuit court found that "W. Va.Code § 17C–5–8 requires that a secondary chemical test of the breath be conducted within two (2) hours from and after the time the person allegedly last drove a motor vehicle." The circuit court then concluded that, because the secondary chemical test of Mr. Sims' breath was conducted more than two hours from the time he last drove a motor vehicle, Commissioner Miller erred by relying on the same to revoke Mr. Sims' license.

Commissioner Miller argues that, in reaching this conclusion, the circuit court erred and misapplied the plain language of W. Va. Code § 17C–5–8(a) (2004) (Repl.Vol.2009), which requires the secondary chemical test of breath be administered within two hours of *either* the act charged or the arrest therefor. Commissioner Miller contends that the secondary chemical test of Mr. Sims' breath was

---

6. In his final order, the Commissioner of the West Virginia Division of Motor Vehicles noted that "[e]vidence was not presented by the Re-

spondent regarding the charges to which he agreed to plead guilty in exchange for the DUI charges to be [sic] dismissed."

conducted within two hours of his arrest and was, therefore, properly relied upon.

Mr. Sims argues that the clear meaning of W. Va.Code § 17C–5–8(a) requires that a sample of a person's blood, breath, or urine must be taken within two hours of the time of the specific act for which the person is being charged. Therefore, he contends, the Intoximeter test was improperly relied upon during the administrative proceedings because it was given to Mr. Sims more than two hours from the time he had allegedly last driven a motor vehicle.

Resolution of this issue requires the Court to examine W. Va.Code § 17C–5–8(a). Therefore, we first observe that "[j]udicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretive inquiry is to ascertain the legislative intent." Syl. pt. 1, *Ohio Cnty. Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983). However, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959).

W. Va.Code § 17C–5–8(a) states, in relevant part,

[u]pon trial for the offense of driving a motor vehicle in this State while under the influence of alcohol, controlled substances or drugs, or upon the trial of any civil or criminal action arising out of acts alleged to have been committed by any person driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, evidence of the amount of alcohol in the person's blood at the time of the arrest or of the acts alleged, as shown by a chemical analysis of his or her blood, breath or urine, is admissible, if the sample or specimen was taken within two hours from and after the time of arrest *or* of the acts alleged.

(Emphasis added). We find this language to be clear, and therefore not subject to our interpretation. " 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' " *Huffman v. Goals Coal Co.,* 223 W.Va. 724, 729, 679 S.E.2d 323, 328 (2009) (quoting Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)). The above-quoted language plainly allows the admission of evidence resulting from a chemical analysis of blood, breath, or urine, so long as the sample or specimen tested was taken within two hours of the time of arrest *or* of the acts alleged. "We have customarily stated that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects." *State v. Rummer,* 189 W.Va. 369, 377, 432 S.E.2d 39, 47 (1993) (internal quotations and citations omitted). Accordingly, we now hold that W. Va.Code § 17C–5–8(a) (2004) (Repl.Vol.2009) allows the admission of evidence of a chemical analysis performed on a specimen that was collected within two hours of either the acts alleged or the time of the arrest.

In the instant case, the evidence demonstrates that Mr. Sims was arrested at 12:19 a.m., and the Intoximeter test at issue was administered at 1:09 a.m., less than one hour later. Therefore, because the breath test was administered within two hours of Mr. Sims' arrest, the evidence resulting therefrom was admissible and properly considered by Commissioner Miller.

### B. Conflicting Testimony

Another ground given by the circuit court for reversing Commissioner Miller's "Remand Final Order" was that Commissioner Miller's order

did not comply with the mandates of *Muscatell [v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996) ], or *Choma [v. West Virginia Division of Motor Vehicles,* 210 W.Va. 256, 557 S.E.2d 310 (2001),] because there was not a proper analysis of the conflicting testimony of [Mr. Sims] and the Arresting Officer.

Commissioner Miller argues that the circuit court erred in finding that the testimonies of Deputy Bailey and Mr. Sims were not reconciled as required by *Muscatell* and *Choma.* Additionally, Commissioner Miller as-

serts that a review of his "Remand Final Order" shows that he complied with both *Muscatell* and *Choma*.

Mr. Sims contends that the circuit court did not err because the Commissioner's "Remand Final Order" fails to discuss various elements of the inconsistencies between the testimony of the arresting officer and that of Mr. Sims. Specifically, Mr. Sims complains that he testified that the field sobriety tests were conducted in an area comprised of nothing but large gravel and that his evidence was not rebutted by Deputy Bailey.[7] In addition, Mr. Sims asserts that his testimony established that he smoked a cigarette within fifteen minutes prior to the administration of the preliminary breath test, and, therefore, the test was not admissible. He contends this evidence also was not disputed by Deputy Bailey.[8] Finally, Mr. Sims complains that there was no evidence that Deputy Bailey observed Mr. Sims for fifteen minutes prior to administering the preliminary breath test.[9]

■ The *Muscatell* Court held that

[w]here there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court.

Syl. pt. 6, *Muscatell*, 196 W.Va. 588, 474 S.E.2d 518. The foregoing holding was rendered in connection with the issue of whether the vehicle stop in *Muscatell* met the reasonable suspicion standard. This Court observed that the Commissioner had "failed to make an adequate analysis of the facts from which this Court or the circuit court could determine whether the stopping of the appellee's vehicle was lawful under the proper standard." 196 W.Va. at 595, 474 S.E.2d at 525. The arresting officer had testified during his direct examination that, prior to the traffic stop, he had observed Ms. Muscatell's vehicle briefly straddle or cross the center line. However, the Court found that on cross examination, the officer appeared to testify that the stop was made solely on the basis of an anonymous call.[10] The Commissioner in *Muscatell* resolved the conflict in favor of the officer's direct testimony, and disregarded his cross examination. Applying the newly established principal of law announced in Syllabus point 6 of the opinion, the *Muscatell* Court commented that "[n]othing in the findings of fact of the Commissioner advises this Court why the Commissioner resolved this conflict in the testimony of the trooper in favor of the direct testimony and disregarded the cross-examination." 196 W.Va. at 598, 474 S.E.2d at 528. Reversing the circuit court's order that upheld the Commissioner's license revocation, this Court went on to conclude that "the ambiguity in the record regarding the trooper's observations immediately before the stop, which is not resolved by the findings of fact below, cannot stand as justification for an investigatory stop or as a supplemental fact to be considered in the totality of the circumstances." *Id.*

In *Choma v. West Virginia Division of Motor Vehicles*, 210 W.Va. 256, 557 S.E.2d 310, the Commissioner's finding that Ms. Choma was guilty of DUI, which had been upheld by the circuit court, was directly contrary to: (1) a video in evidence that showed her to be upset, but clearly not intoxicated;

---

7. To the contrary, Deputy Bailey stated on the record that the gravel was well-packed and was a flat level surface upon which he had no difficulty demonstrating the test properly for Mr. Sims.

8. Again, to the contrary, Deputy Bailey plainly stated on the record that Mr. Sims did not smoke a cigarette during the fifteen-minute observation period. Furthermore, we note that Mr. Sims' testimony regarding when he smoked a cigarette was quite evasive and rather confusing.

9. Deputy Bailey in fact stated on the record that he observed Mr. Sims during the entire fifteen-minute observation period and that Mr. Sims did not place or have anything in his mouth during that time.

10. The *Muscatell* Court observed that, "[h]ere, observations of the trooper immediately before making the stop are critical to the legality of the stop. It must be determined that the stop is not justified by mere pretext that would mock the constitutional protections to which all citizens are entitled." *Muscatell v. Cline*, 196 W.Va. 588, 598, 474 S.E.2d 518, 528 (1996).

(2) the testimony of an expert witness who had viewed the video and opined that it did not portray a person who was intoxicated; and (3) a breath analyzer test that was apparently flawed insofar as it showed Ms. Choma to have "a blood alcohol concentration of slightly more than thirty one-hundredths of one percent (.305) by weight, which is more than three times the 'legal limit' ... and is associated with a very high level of intoxication—close to a stupor." *Choma*, 210 W.Va. at 259 n. 3, 557 S.E.2d at 313 n. 3. Relying on Syllabus point 6 of *Muscatell*, 196 W.Va. 588, 474 S.E.2d 518, the *Choma* Court concluded that the "Commissioner's decision arbitrarily and capriciously discredited and disregarded the evidence that favored the appellant, and was clearly contrary to the weight of the evidence." 210 W.Va. at 259, 557 S.E.2d at 313.

Unlike *Muscatell*, which involved an inconsistency between the direct and cross examination testimony of the arresting officer, and *Choma*, in which the Commissioner's conclusion that Ms. Choma was guilty of DUI was completely contrary to the evidence presented, the instant case involves a conflict between the testimony of Officer Bailey and that of Mr. Sims. Thus, the discrepancy in this case simply boils down to a credibility issue.

Under *Muscatell*, the Commissioner is required to address credibility issues by providing "a reasoned and articulate decision, weighing and explaining the choices made

and rendering its decision capable of review by an appellate court." Syl. pt. 6, in part, *Muscatell*, 196 W.Va. 588, 474 S.E.2d 518.[11] However, the *Muscatell* Court clarified that

> [t]he purpose of these rules is not to burden an administrative agency with proving or recording the obvious. The purpose is to allow a reviewing court (and the public) to ascertain that the critical issues before the agency have indeed been considered and weighed and not overlooked or concealed. Indeed, a reviewing court cannot accord to agency findings the deference to which they are entitled unless such attention is given to at least the critical facts upon which the agency has acted.

196 W.Va. at 598, 474 S.E.2d at 528. Furthermore, this Court has recognized that "[c]redibility determinations made by an administrative law judge are ... entitled to deference." Syl. pt. 1, in part, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). This is so because the hearing examiner who observed the witness testimony is in the best position to make credibility judgments. *Cf. Gum v. Dudley*, 202 W.Va. 477, 484, 505 S.E.2d 391, 398 (1997) ("The trial court ... observed the demeanor of the witnesses and other nuances of a trial that a record simply cannot convey.").[12] When viewed from this perspective, we disagree with the circuit court's finding that Commissioner Miller's "Remand Final Order" did not contain a "proper analysis of the conflicting testimony of the Petitioner

11. *Cf. Brown v. Gobble*, 196 W.Va. 559, 569, 474 S.E.2d 489, 499 (1996) ("[T]he trier of fact is the ultimate judge of credibility and is free to accept or reject any testimony it does not find credible. However, when a judge, sitting without jury, decides against the greater amount of the evidence, the judge is obligated to give a fuller explanation for his or her ruling. Under these circumstances, the findings in a bench trial must be sufficiently detailed, reasoned, and logical to enable the reviewing court to trace a persuasive path between the evidence and the judgment.").

12. *See also Francis v. Bryson*, 217 W.Va. 432, 436, 618 S.E.2d 441, 445 (2005) ("The lower court heard the evidence presented by the opposing parties in the present case and was in a position to make credibility determinations that must be accorded deference."); Syl. pt. 2, in part, *Faris v. Harry Green Chevrolet, Inc.*, 212 W.Va. 386, 572 S.E.2d 909 (2002) ("It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting[.]" (quotations and citation omitted)); *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record."); Syl. pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995) ("Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled."); *State v. Butcher*, 165 W.Va. 522, 527, 270 S.E.2d 156, 159 (1980) ("The trial court had the benefit of observing the demeanor of the witness as he testified, and we are without such benefit.").

and the Arresting Officer" to satisfy *Muscatell* and *Choma*.

The circuit court failed to identify the particular conflicting testimony in relation to which it found Commissioner Miller's analysis lacking. Mr. Sims contends that the conflicting testimony pertained to the condition of the surface on which the field sobriety tests were conducted, whether Mr. Sims smoked a cigarette within fifteen minutes of taking the preliminary breath test, and whether he was observed by Deputy Bailey for a period of fifteen minutes prior to taking the preliminary breath test.

With respect to the conflicting testimony regarding the surface upon which Mr. Sims performed the field sobriety tests, the "Remand Final Order" explained that, while Mr. Sims testified that there was large gravel in the area where the field sobriety tests were administered, and he offered a sample of one piece of gravel from the area, there was not sufficient evidence to show that the tests were conducted in an area comprised of nothing but large gravel. With respect to whether Mr. Sims smoked a cigarette within fifteen minutes of the preliminary breath test and whether Deputy Bailey observed Mr. Sims for the requisite fifteen minutes prior to administering the test, the Commissioner explained that Mr. Sims "went back and forth on whether the cigarette was smoked before or after the Arresting Officer started his observation period," while "[t]he Arresting Officer clearly stated that he [Mr. Sims] did not smoke a cigarette after the fifteen minute observation period began." The foregoing explanations provided by Commissioner Miller in his "Remand Final Order" demonstrate that the issues were indeed "considered and weighed and not overlooked or concealed." *Muscatell*, 196 W.Va. at 598, 474 S.E.2d at 528. Accordingly, we conclude the order is sufficient to comply with *Muscatell* and *Choma* and the circuit court erred in ruling otherwise.

### C. Weight Given to Dismissal of Criminal Matter

■ Commissioner Miller argues that the circuit court erred in finding that this Court's decision in *Choma* requires the Commissioner to give substantial weight to the dismissal

of the criminal charges against Mr. Sims. The fact of the dismissal was presented to the hearing examiner, but it was noted that the criminal matter was dismissed based on a plea agreement to plead guilty to separate charges. No evidence was presented by Mr. Sims regarding the charges to which he agreed to plead guilty in exchange for the dismissal of the DUI charge. Commissioner Miller contends that the dismissal of the criminal matter, without adjudication of the DUI charge, does not provide a basis for reversal of the order of revocation in this matter. The Commissioner points out that he noted the dismissal and properly found that it did not outweigh the evidence presented.

■ Conversely, Mr. Sims argues that the Commissioner failed to give substantial weight to the dismissal of the criminal case against Mr. Sims and improperly placed the burden on Mr. Sims to show why the charges were dismissed.

■ In *Choma*, this Court held that

[i]n administrative proceedings under W. Va.Code, 17C–5A–1 *et seq.*, the commissioner of motor vehicles must consider and give substantial weight to the results of related criminal proceedings involving the same person who is the subject of the administrative proceeding before the commissioner, *when evidence of such results is presented in the administrative proceeding.*

Syl. pt. 3, *Choma*, 210 W.Va. 256, 557 S.E.2d 310 (emphasis added). In addition, the *Choma* Court clarified, in footnote 4, that "[t]his holding places no affirmative duty on the Commissioner to obtain or adduce information about other proceedings." 210 W.Va. at 260 n. 4, 557 S.E.2d at 314 n. 4. Finally, this Court has observed that "[a]lthough, the Commissioner is to give consideration to the results of related criminal proceedings, the criminal proceedings are not dispositive of the administrative license revocation proceedings and are not a jurisdictional prerequisite to the administrative proceedings." *Carroll v. Stump*, 217 W.Va. 748, 756, 619 S.E.2d 261, 269 (2005). The foregoing holding and related comments by this Court

make clear that the Commissioner must "consider and give substantial weight to the results of related criminal proceedings" only when such evidence is "presented in the administrative proceeding," and that there is no affirmative duty placed upon the Commissioner to obtain information about other proceedings. Syl. pt. 3, in part, *Choma*, 210 W.Va. 256, 557 S.E.2d 310. Thus, insofar as Mr. Sims sought to have information regarding his related criminal proceedings considered in the Department of Motor Vehicles administrative proceedings, the burden was properly placed upon Mr. Sims to provide complete information regarding the same. Furthermore, it is clear from the record that Commissioner Miller considered the evidence presented pertaining to Mr. Sims' related criminal proceedings; however, because the evidence of the dismissal of the DUI charges presented by Mr. Sims was incomplete, Commissioner Miller was correct in declining to give the evidence substantial weight, and in finding that the dismissal did not outweigh the substantial evidence supporting the revocation of Mr. Sims' license for DUI.[13] *See, e.g., Lowe v. Cicchirillo*, 223 W.Va. 175, 182, 672 S.E.2d 311, 318 (2008) ("Upon reviewing the final order in its entirety, we believe that it shows that the DMV did consider the criminal proceedings and gave appropriate weight to the evidence as presented. The DMV properly found that this evidence did not outweigh other evidence in the record, and correctly found that there was sufficient evidence to show that the appellee was driving under the influence. . . ."). Accordingly, we conclude that the circuit court erroneously relied on this issue as a basis for reversing Mr. Sims' license revocation.

### D. Video Tape

 In its order reversing Commissioner Miller's order and reinstating Mr. Sims' driver's license, the circuit court included the following findings:

13. There was a videotape made of the Petitioner [Mr. Sims] at the site where the secondary chemical test of the breath was conducted and such videotape was not introduced.

14. The failure of the Arresting Officer to introduce the videotape of the Petitioner [Mr. Sims] at the site where he allegedly provided a sample of his breath raises an adverse inference against the testimony of the Arresting officer.

Commissioner Miller argues that the circuit court erred in finding that the failure of an investigating officer to introduce a videotape at an administrative hearing creates an adverse inference that such videotape would be adverse to the testimony of the officer. Commissioner Miller notes that, in *Belknap v. Cline*, 190 W.Va. 590, 592, 439 S.E.2d 455, 457 (1993) (per curiam), this Court rejected the notion that a "video, simply because it existed, had to be introduced into evidence" at an administrative hearing. Finally, Commissioner Miller contends that the circumstances in this case do not warrant an "adverse inference," insofar as such inferences are reserved for cases involving spoliation of evidence and failure to call a material witness.

Mr. Sims argues that the circuit court did not err in finding that the failure of the arresting officer to produce a videotape raises an adverse inference that such videotape would be adverse to the testimony of the officer. Mr. Sims asserts that a driver's license revocation proceeding is civil in nature, and the failure of a party in a civil proceeding to present relevant and material evidence may give rise to an adverse inference. Mr. Sims directs this Court's attention

---

**13.** "Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol." Syllabus Point 2, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984).

Syl. pt. 2, *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997). In this case, the evidence establishing that Mr. Sims had driven under the influence of alcohol included Mr. Sims' admission that he had been operating a vehicle, as documented on the DUI Information Sheet; his failure of the various field sobriety tests administered by Deputy Bailey; Deputy Bailey's observation of Mr. Sims' glassy eyes and slurred speech; and the secondary breath tests that indicated Mr. Sims' blood alcohol content was .091.

to *McGlone v. Superior Trucking Company, Inc.*, 178 W.Va. 659, 363 S.E.2d 736 (1987).

In Syllabus point 3 of *McGlone*, this Court held:

The unjustified failure of a party in a civil case to call an available material witness *may, if the trier of the facts so finds,* give rise to an inference that the testimony of the "missing" witness would, if he or she had been called, have been adverse to the party failing to call such witness. To the extent that syllabus point 1 of *Vandervort v. Fouse*, 52 W.Va. 214, 43 S.E. 112 (1902), syllabus point 5 of *Garber v. Blatchley*, 51 W.Va. 147, 41 S.E. 222 (1902), and syllabus point 3 of *Union Trust Co. v. McClellan*, 40 W.Va. 405, 21 S.E. 1025 (1895), are inconsistent with this opinion, they are hereby overruled.

178 W.Va. 659, 363 S.E.2d 736 (emphasis added). Initially, we note that the foregoing syllabus point from *McGlone* does not address the issue herein presented, because the syllabus point addresses the failure of a party to call a *material witness*, whereas the instant matter pertains to a videotape, the production of which could have been sought by Mr. Sims. Although the syllabus point in *McGlone* pertained only to a material witness, the *McGlone* Court did explain that an adverse inference *may* be appropriate in circumstances involving a failure to procure and/or produce evidence that is readily available. In this regard, the *McGlone* Court observed that

"[t]he cases are replete with statements to the effect that, where one party to a legal controversy has within his control evidence material to the issue and does not produce it, there is a strong presumption that such evidence, if produced, would operate to his prejudice. This so-called presumption arises from the failure to produce real or documentary evidence, the failure to call a material witness, or from a party's own failure to take the stand as a witness or, as a witness, to answer questions when he possesses material knowledge. It may arise, also, from the failure to procure evidence which, though not in hand, is readily available...."

*McGlone*, 178 W.Va. at 664, 363 S.E.2d at 741 (quoting *Jacobs v. Jacobs*, 218 Va. 264, 268–69, 237 S.E.2d 124, 127 (1977)).

■■■ While the permissible adverse inference standard of *McGlone* might be proper where a party fails to obtain or preserve material evidence,[14] the instant case did not involve such a failure. Mr. Sims could have obtained a copy of the videotape at issue, and, if the video was in fact favorable to him, he could have attempted to present the same during the administrative hearing. However, in the instant case, Mr. Sims did not request or subpoena the videotape, nor did the hearing examiner order production of the video or hold the record open for its admission.[15] Under these circumstances, no adverse inference was warranted. Further-

---

**14.** *Cf.* Syl. pt. 2, in part, *Tracy v. Cottrell*, 206 W.Va. 363, 524 S.E.2d 879 (1999) ("Before a trial court may give an adverse inference jury instruction or impose other sanctions against a party for spoliation of evidence, the following factors must be considered: (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that the evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence.").

**15.** *See, e.g., Belknap v. Cline*, 190 W.Va. 590, 592, 439 S.E.2d 455, 457 (1993) ("Initially, we emphasize that we do not mean to suggest that the video, simply because it existed, had to be intro-

duced into evidence. The crucial issue here is not the existence of the video but the fact that it was offered into evidence by the police, was thereafter also requested by the Appellant, and was indeed ordered by the hearing examiner. The officer raised the issue of the video and moved it into evidence. The Appellant then approved of the introduction, and the hearing examiner ordered the video to be produced within thirty days. Once this sequence of events occurred, the issue was no longer one of whether to introduce the video or whether it was necessary to the proceedings. The issue then focused more centrally on the Appellant's right to have that evidence introduced as promised by the hearing examiner. If the police had not initially offered the video as evidence, the remaining evidence against the Appellant may indeed have been sufficient to justify suspension of the Appellant's license.").

more, an adverse inference based upon the failure to produce the video would not have been proper in this case insofar as sufficient evidence had been presented to establish that Mr. Sims operated a motor vehicle upon a public street or highway while under the influence of alcohol.

> "There is no presumption where there is already sufficient evidence so that that omitted would be merely corroborative, nor where due diligence to obtain the evidence is shown or there is some valid excuse for its nonproduction[;] nor does the rule operate against a defendant when the plaintiff has not made a prima facie case."

*Id.* at 664–65, 363 S.E.2d at 741–42 (quoting *Jacobs v. Jacobs,* 218 Va. at 268–69, 237 S.E.2d at 127).[16] Thus, the circuit court erred in reversing Commissioner Miller's order revoking Mr. Sims' driver's license based

upon the Commissioner's failure to apply an adverse inference.[17]

## IV.

## CONCLUSION

Based upon the foregoing discussion, the order of the Circuit Court of Nicholas County, dated December 30, 2009, is reversed, and this case is remanded for reinstatement of Commissioner Miller's "Remand Final Order," dated August 3, 2009, revoking Mr. Sims' license to drive a motor vehicle.

Reversed and Remanded.

**16.** The Court in *McGlone* also clarified that " '[d]espite the language of presumption generally employed, this is no more than a permissive inference. It does not supplant the necessity for other, at least *prima facie,* proof sufficient to sustain a judgment or a decree.' " *Id.* at 665, 363 S.E.2d at 742 (quoting *Jacobs v. Jacobs,* 218 Va. 264, 268–69, 237 S.E.2d 124, 127 (1977)).

**17.** Commissioner Miller raised an additional issue complaining that the circuit court erred in

concluding that the results of a blood test that had been requested by Mr. Sims were improperly admitted without a proper foundation at the administrative hearing. We decline to address this issue because the evidence was sufficient to establish that Mr. Sims operated a motor vehicle upon a public street or highway while under the influence of alcohol without consideration of the blood test results.