IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**April 1, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1292

STEVEN O. DALE, ACTING COMMISSIONER, WEST VIRGINIA
DIVISION OF MOTOR VEHICLES,
Petitioner

v.

ALBERTO VELTRI,
Respondent

Appeal from the Circuit Court of Hancock County
The Honorable Ronald E. Wilson, Judge
Civil Action No. 10-AA-1

REVERSED AND REMANDED WITH DIRECTIONS

Submitted: February 20, 2013
Filed: April 1, 2013

Patrick Morrisey, Esq.
Attorney General
Elaine L. Skorich, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

Robert G. McCoid, Esq.
McCamic, Sacco, & McCoid, P.L.L.C.
Wheeling, West Virginia
Attorney for Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

2. "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

3. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

4. "W. Va. Code § 17C-5-8(a) (2004) (Repl. Vol. 2009) allows the admission of evidence of a chemical analysis performed on a specimen that was collected within two hours

of either the acts alleged or the time of the arrest." Syl. Pt. 5, *Sims v. Miller*, 227 W.Va. 395, 709 S.E.2d 750 (2011).

5. "Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court." Syl. Pt. 6, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

6. "Credibility determinations made by an administrative law judge are ... entitled to deference." Syl. Pt. 1, in part, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Per Curiam:

This is an appeal by Steven O. Dale, Acting Commissioner of the West Virginia Division of Motor Vehicles (hereinafter "DMV")[1], from an order of the Circuit Court of Hancock County reversing a DMV order revoking Mr. Alberto Veltri's driver's license for the offense of driving under the influence of alcohol (hereinafter "DUI"). On appeal, the DMV contends that the lower court erred by (1) finding insufficient evidence to warrant the license revocation and essentially imposing upon the DMV an obligation to provide evidence of Mr. Veltri's blood alcohol level at the precise time he was operating the motor vehicle; (2) finding Mr. Veltri's testimony more credible than the DUI Information Sheet; and (3) applying an administrative rule that is no longer applicable regarding the arresting officer's attendance at the license revocation hearing. Having thoroughly reviewed the briefs, arguments of counsel, appendix record, and applicable precedent, this Court concludes that the circuit court erred by reversing the license revocation. Therefore, the order of the circuit court is reversed, and this case is remanded to the circuit court to reinstate the DMV order revoking Mr. Veltri's license to operate a motor vehicle.

---

[1]Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, this Court has substituted the Petitioner's name with Steven O. Dale, Acting Commissioner of the West Virginia Division of Motor Vehicles.

I.  Factual and Procedural History

Weirton Police Officer S.M. Falbo stopped Mr. Veltri's motor vehicle based upon a suspicion of DUI at 1:43 a.m. on July 22, 2009.  According to the DUI Information Sheet, Officer Falbo observed Mr. Veltri's vehicle weaving, almost striking another vehicle, turning with a wide radius, and responding slowly to traffic signals.  The DUI Information Sheet further indicated that Mr. Veltri had the odor of alcohol on his breath, slurred speech, bloodshot eyes, difficulty in responding to directions, and unsteadiness when exiting the vehicle, standing, and walking.  Additionally, Mr. Veltri failed the "one-leg stand" and the "walk and turn" tests.

Officer Falbo arrested Mr. Veltri at 1:57 a.m.  A breath test[2] conducted at 2:31 a.m., forty-eight minutes after the initial stop and thirty-four minutes after the arrest, indicated a blood alcohol level (hereinafter "BAC") of .095%.[3]  When asked whether he was under the influence of alcohol or drugs, Mr. Veltri admitted to drinking a small glass of wine and being "a little bit" under the influence.

---

[2]An initial breath test, conducted prior to the 2:31 a.m. test, was not utilized because the police officer had not observed the driver for fifteen minutes prior to the test.  That first breath test is not an issue in this case.

[3]Operating a motor vehicle with a concentration of eight hundredths of one percent (.08%) or more of alcohol in the blood constitutes DUI.  *See* W. Va. Code § 17C-5-2(d) (2009).

Subsequent to a March 4, 2010, DMV hearing, Mr. Veltri's license was revoked. Mr. Veltri did not request the presence of the arresting officer at the license revocation hearing; thus, the hearing examiner relied upon the information contained in the DUI Information Sheet. The hearing examiner referenced the conflict between the DUI Information Sheet and the testimony of Mr. Veltri, reasoning that while Mr. Veltri "refuted the Investigating Officer's allegation made in reference to his manner of driving and his level of intoxication," Mr. Veltri "only stated that he did not do what the Investigating Officer stated, offering no other explanation of his manner of driving or why he was not intoxicated even though his blood alcohol concentration was ninety-five thousandths of one percent."

By order entered September 1, 2011, the circuit court reversed the license revocation, reasoning that (1) the DMV failed to prove Mr. Veltri's alcohol content at the actual time of driving the vehicle; (2) the DMV did not comply with *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), which requires a hearing officer to address credibility issues in a reasoned manner; and (3) the failure of the investigating officer to appear at the license revocation hearing required the dismissal of the case against Mr. Veltri. The DMV has appealed that decision to this Court.

3

## II. Standard of Review

This Court has consistently observed the applicable standards for review of a circuit court's order deciding an administrative appeal. In syllabus point one of *Muscatell*, this Court stated as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

In syllabus point two of *Muscatell,* this Court addressed the situation, as in the present case, where a circuit court has reversed the result obtained in the administrative agency. This Court held as follows:

> In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*.

Further, where a matter of statutory interpretation is presented, this Court has stated that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995). Observing these standards of review, this Court addresses the issues raised in this matter.

4

III.  Discussion

A.  The Concept of Retrograde Extrapolation

The DMV contends that the lower court erred by ruling that it was required to provide evidence of Mr. Veltri's BAC at the precise time of driving.  The process through which such an evaluation could potentially be accomplished is termed "retrograde extrapolation."[4]  Mr. Veltri raised this issue during the DMV hearing, albeit somewhat tangentially and without reference to any potential manner of assessment, through the introduction of portions of a 1998 driver's handbook published by the DMV demonstrating the validity of the concept of gradual absorption of alcohol and its effect upon BAC levels.[5]

The DMV argues that the circuit court, by crediting Mr. Veltri's assertion that it is possible for BAC to vary over a period of time subsequent to an individual's last drink

---

[4]"Retrograde extrapolation represents the technique through which experts estimate alcohol concentration at some earlier time based on the test results at some later time." *State v. McGowan*, 139 P.3d 841, 845 (Mont. 2006); *see also State v. Larson*, 429 N.W.2d 674 (Minn. Ct. App. 1988); *State v. Tischio*, 527 A.2d 388 (N.J. 1987) (holding that retrograde extrapolation not required in proof of DUI).  The retrograde extrapolation evaluation would require a complex scientific investigation of several factors unique to each individual.  As observed by the Montana Supreme Court in *McGowan*, the required utilization of retrograde extrapolation evidence would place an "impossible burden" upon the DMV.  139 P.2d at 845-46. The evaluation would require information "such as when, and in what amounts, the defendant consumed alcohol before driving.  Further, the rate of absorption of alcohol varies greatly among individuals . . . ." *Id.*

[5]In its brief, the DMV correctly emphasizes that the chart included in the 1998 DMV handbook did not "take into account the personal characteristics of the driver such as gender, age, medical condition, time of last meal, or contents of last meal, and the kind of alcohol consumed."

5

of alcohol, improperly imposed upon the DMV a duty to present retrograde extrapolation evidence where no such requirement exists in West Virginia. The guiding statutory framework on this issue is contained in West Virginia Code § 17C-5-8(a) (2009), providing, in pertinent part, as follows:

> Upon trial for the offense of driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs, or upon the trial of any civil or criminal action arising out of acts alleged to have been committed by any person driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, evidence of the amount of alcohol in the person's blood at the time of the arrest or of the acts alleged, as shown by a chemical analysis of his or her blood, breath or urine, is admissible, if the sample or specimen was taken within two hours from and after the time of arrest or of the acts alleged. The evidence gives rise to the following presumptions or has the following effect:
>
> . . . .
>
> (3) Evidence that there was, at that time, eight hundredths of one percent or more, by weight, of alcohol in his or her blood, shall be admitted as prima facie evidence that the person was under the influence of alcohol.

The DMV contends that West Virginia Code § 17C-5-8 unambiguously creates the presumption that a BAC of .08% or more *up to two hours after* an arrest or the acts alleged is prima facie evidence of such BAC at the time of driving. The opinions of this Court support this assertion. In *State v. Dyer*, 177 W.Va. 567, 355 S.E.2d 356 (1987), for instance, this Court applied that statutory presumption and held that evidence of BAC was

6

not admissible if taken outside the statutory two-hour time limit.[6] Syllabus point five of *Sims v. Miller*, 227 W.Va. 395, 709 S.E.2d 750 (2011), concisely addressed this issue, stating as follows: "W. Va. Code § 17C–5–8(a) (2004) (Repl. Vol. 2009) allows the admission of evidence of a chemical analysis performed on a specimen that was collected within two hours of either the acts alleged or the time of the arrest." The *Sims* Court evaluated the statute and reasoned as follows:

> We find this language to be clear, and therefore not subject to our interpretation. "'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.'" *Huffman v. Goals Coal Co.*, 223 W.Va. 724, 729, 679 S.E.2d 323, 328 (2009) (quoting Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)). The above-quoted language plainly allows the admission of evidence resulting from a chemical analysis of blood, breath, or urine, so long as the sample or specimen tested was taken within two hours of the time of arrest or of the acts alleged.

227 W.Va. at 400, 709 S.E.2d at 755.

Mr. Veltri's argument before the hearing examiner implied that retrograde extrapolation evidence is a relevant consideration in establishing the manner in which an individual's BAC rises immediately after consuming alcohol and subsequently declines.

---

[6]The admission of blood alcohol test results in *Dyer*, however, was not deemed to be reversible error because the results were not utilized at trial in conjunction with statutory presumptions or as evidence that the driver was under influence of alcohol at time of the alleged offense. Rather, the results were used to show that the driver had consumed alcoholic beverages in substantial amounts prior to the incident in question. 177 W.Va. at 573, 355 S.E.2d at 362.

Thus, Mr. Veltri argues that the lower court acted within its discretion in concluding that Mr. Veltri's BAC at the time of driving was below .08%. Further, Mr. Veltri maintains that the circuit court did not actually *require* the DMV to provide evidence of retrograde extrapolation; rather, the court considered Mr. Veltri's argument on the issue as overcoming the prima facie evidence of the BAC chemical test.

The deficiency in Mr. Veltri's argument regarding the concept of retrograde extrapolation is that he failed to present any evidence at trial of the retrograde extrapolation in his individual circumstance. He simply presented the *concept* of retrograde extrapolation in seeking to rebut the DUI evidence. The evidence clearly demonstrates that Mr. Veltri was stopped at 1:43 a.m. and arrested at 1:57 a.m. The breathalyzer test at issue was administered at 2:31 a.m., only forty-eight minutes after the stop and thirty-four minutes after the arrest. Consequently, based upon the clear language of West Virginia Code § 17C-5-8 and the precedent of this Court, because the breath test was administered within two hours of Mr. Veltri's arrest, the evidence resulting therefrom was admissible as prima facie evidence that Mr. Veltri was under the influence of alcohol while driving, and such evidence was properly considered by the DMV in the administrative license revocation hearing. The DMV satisfied its burden under the statute, and evidence of retrograde extrapolation was not required to be submitted by the DMV.

8

B. Weighing of Evidence

The DMV also asserts that the circuit court erred in crediting Mr. Veltri's testimony to a greater degree than the assertions contained in the DUI Information Sheet. The DMV argues that the circuit court was incorrect in its conclusion that the hearing examiner failed to comply with the mandates of *Muscatell* by insufficiently analyzing the conflicting testimony of Mr. Veltri and the arresting officer, through the DUI Information Sheet. Syllabus point six of *Muscatell* provides guidance for reconciling conflicting evidence, as follows:

> Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court.

196 W.Va. at 590, 474 S.E.2d at 520. The DMV contends that the hearing examiner properly weighed the evidence. Conversely, Mr. Veltri asserts that the circuit correctly arrived at the opposite conclusion, based upon Mr. Veltri's testimony contradicting many of the statements contained in the DUI Information Sheet.

This Court's decision in *Muscatell* was premised upon the issue of whether a vehicle stop satisfied the reasonable suspicion standard. *Id*. at 594, 474 S.E.2d at 524. This Court noted that the Commissioner had "failed to make an adequate analysis of the facts from which this Court or the circuit court could determine whether the stopping of the appellee's

9

vehicle was lawful under the proper standard." *Id.* at 595, 474 S.E.2d at 525. The problem in *Muscatell* centered upon the conflicting testimony of the arresting officer. On direct examination, he indicated that he had observed Ms. Muscatell's vehicle cross the center line; on cross examination, however, the officer indicated that an anonymous phone call had formed the basis for the stop. Although the Commissioner ultimately resolved that conflict in favor of the officer's direct testimony, this Court recognized that "[n]othing in the findings of fact of the Commissioner advises this Court why the Commissioner resolved this conflict in the testimony of the trooper in favor of the direct testimony and disregarded the cross-examination." *Id.* at 598, 474 S.E.2d at 528 (emphasis supplied).

The conflict in the case sub judice does not involve inconsistency between the direct and cross examinations of a single individual. Rather, this matter is focused upon the conflict between the officer's DUI Information Sheet and the testimony of the driver, Mr. Veltri. In that manner, this case is extremely similar to the fact pattern in *Sims*, wherein the conflict was between the testimony of the arresting officer and the driver, Mr. Sims. 227 W. Va. at 402, 709 S.E.2d at 757. The *Sims* Court found that "the discrepancy . . . simply boils down to a credibility issue." *Id.* Such credibility issues are generally held to be within the sound discretion of the administrative law judge and are entitled to deference. *See* Syl. Pt. 1, in part, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000) ("[c]redibility determinations made by an administrative law judge are . . . entitled to

10

deference."). As noted in *Sims*, deference is required "because the hearing examiner who observed the witness testimony is in the best position to make credibility judgments." 227 W.Va. at 402, 709 S.E.2d at 757. Based upon this reasoning, the *Sims* Court disagreed with "the circuit court's finding that Commissioner Miller's 'Remand Final Order' did not contain a 'proper analysis of the conflicting testimony of the Petitioner and the Arresting Officer' to satisfy *Muscatell.*" *Id.* at 402-03, 709 S.E.2d at 757-58.

Similarly, the circuit court in the present case observed that there "was a conflict in what the officer wrote and what Mr. Veltri said and therefore, the Commissioner was required to address credibility issues."[7] The circuit court found that the "statements

---

[7]The transcript of the hearing reveals a series of questions addressed to Mr. Veltri. Most of those questions elicited single word answers from Mr. Veltri, essentially denying all of the allegations contained in the DUI Information Sheet. For example, when asked if he was "weaving at any time," Mr. Veltri answered, "No, I wasn't weaving." The questions continued as follows:

> Mr. Pizzuti (counsel for Mr. Veltri): And did you almost strike an object or a vehicle?
>
> Mr. Veltri: Huh huh, no.
>
> Mr. Pizzuti: Okay. So in other words do you think you were driving improperly in anyway?
>
> Mr. Veltri: I don't think so, no.
>
> Mr. Pizzuti: Okay. And did you obey all the traffic laws when you were driving?
>
> Mr. Veltri: Yeah, I wasn't speeding or anything.

11

contained in the Hearing Examiner and Commissioner's Final Order" do not satisfy the

*Muscatell* standard.

----

Mr. Pizzuti: Okay. Did you feel that you were under the influence of alcohol when you were driving at that time? In other words do you think you were drunk?

Mr. Veltri: I wasn't drunk, no.

Mr. Pizzuti: Okay. And you were not affected in anyway from driving?

Mr. Veltri: No. Absolutely not.

Mr. Pizzuti: So in other words you were not impaired?

Mr. Veltri: Not impaired for driving, no.

Mr. Pizzuti: Okay. And you admitted to the officers, to the officer that you had some alcoholic beverage correct?

Mr. Veltri: I did tell I had a small glass of wine.

    . . . .

Mr. Pizzuti: Were you unsteady?

Mr. Veltri: I was steady, no, no I wasn't unsteady.

    . . . .

Mr. Pizzuti: Was your speech slurred?

Mr. Veltri: No.

Mr. Pizzuti: And do you believe that your eyes were blood shot?

Mr. Veltri: No.

Upon review of the order of the hearing examiner, this Court finds that the lower court erred in concluding that the *Muscatell* standard was violated. As referenced above, the hearing examiner clearly identified the conflict between the DUI Information Sheet and the testimony of Mr. Veltri. The hearing examiner subsequently resolved that conflict by explaining that although Mr. Veltri "refuted the Investigating Officer's allegation made in reference to his manner of driving and his level of intoxication," Mr. Veltri "only stated that he did not do what the Investigating Officer stated, offering no other explanation of his manner of driving or why he was not intoxicated even though his blood alcohol concentration was ninety-five thousandths of one percent."[8]

This Court finds that *Muscatell's* requirement that the conflict in evidence be "resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court" was adequately satisfied by the hearing examiner in this case. *Muscatell*, 196 W.Va. at 590, 474 S.E.2d at 520. The hearing examiner was in a position to observe the demeanor of the witness, noted the obvious

[8]The issue of exactly what the hearing examiner meant in utilizing the word "refute" was raised in this appeal. While Webster's Dictionary defines refute as "to prove wrong by argument or evidence," it also indicates that refute can mean "to deny the truth or accuracy of." Webster's New Collegiate Dictionary 965 (1979). Thus, the hearing examiner's use of the word "refute" does not necessarily indicate a conclusion that Mr. Veltri proved the DUI Information Sheet to be incorrect. On the contrary, a reading of the hearing examiner's decision within the context of the entire decision clearly demonstrates that the hearing examiner's use of the word "refute" was intended merely to indicate that Mr. Veltri denied the truth of the DUI Information Sheet allegations and rebutted them in some manner in his own testimony.

difference between the allegations of the DUI Information Sheet and Mr. Veltri's denials, and resolved the conflict by explaining in the order that Mr. Veltri simply denied the actions surrounding the DUI incident without offering any credible explanation to the contrary.

In rendering its decision to reverse the hearing examiner's conclusions, the circuit court also relied upon the fact that the investigating officer was not present at the license revocation hearing. In so doing, the circuit court quoted an outdated version of West Virginia Code of State Rules § 91-1-3.7.2, requiring dismissal of the revocation matter if the arresting officer fails to appear. That rule, as amended in 2005, no longer requires the dismissal of the case where the arresting officer is not present at the hearing. *Id.* It is also imperative to note that Mr. Veltri did not *request* the presence of the arresting officer at the hearing.[9]

---

[9]West Virginia Code § 17C-5A-2(d) (2008), in effect at the time of this incident, required the presence of the arresting officer *only* if requested by the person whose license is at issue. If the officer was not present, the statute provided that the commissioner "shall consider the written statement, test results and any other information submitted by the investigating officer . . . ." *Id.* Although West Virginia Code of State Regulations § 91-1-3.7.2 provides that where the officer is not in attendance, revocation or suspension may not be based solely on the arresting officer's affidavit, the DMV correctly asserts that such rule must be read in conjunction with West Virginia Code § 17C-5A-2(d), which allowed the commissioner to rely on the arresting officer's written statement and other information when the licensee did not request the investigating officer's presence at the hearing. West Virginia Code § 17C-5A-2 was amended subsequent to the hearing in this matter; those amendments are not relevant to this Court's decision herein.

IV. Conclusion

Based upon the foregoing discussion, the order of the Circuit Court of Hancock County is reversed, and this case is remanded to the circuit court for reinstatement of the DMV order revoking Mr. Veltri's license to drive a motor vehicle.

Reversed and Remanded with Directions.