# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Steven O. Dale, Acting Commissioner,**
**West Virginia Division of Motor Vehicles,**
**Petitioner Below, Petitioner**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0216** (Kanawha County 13-AA-81)

**Jared A. Judy,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Steven O. Dale, Acting Commissioner, West Virginia Division of Motor Vehicles ("DMV"), by counsel Elaine L. Skorich, appeals the January 24, 2014, order of the Circuit Court of Kanawha County that affirmed an order of the Office of Administrative Hearings ("OAH"). The OAH order, entered May 29, 2013, reversed the DMV Commissioner's Order of Revocation of Respondent Jared A. Judy's operator's license for the offense of driving under the influence of alcohol ("DUI"). Respondent did not file a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 28, 2010, at approximately 1:25 a.m., Patrolman C.M. Gomez ("Officer Gomez" or "investigating officer") of the Moorefield Police Department initiated a traffic stop of a black 2011 GMC Yukon with Ohio plates.[1] The vehicle was traveling on Route 55 in Hardy County and was being driven by respondent.

The DUI Information Sheet completed by Officer Gomez noted "speed" under the "Vehicle in Motion" section. It further noted that respondent exhibited an odor of alcohol; slurred speech; bloodshot and watery eyes; and unsteadiness while exiting the vehicle, walking to the roadside, and standing. Also noted on the DUI Information Sheet was respondent's admission that he had consumed four beers at a bar. At the administrative hearing, respondent testified that he last consumed alcohol earlier in the evening, between 7:00 p.m. and 7:30 p.m. Respondent failed all three of the field sobriety tests given. He was subsequently arrested for DUI and transported to the Hardy County Sheriff's Department where he was administered a

---

[1] At the administrative hearing, respondent explained that he had rented the vehicle that day while his own vehicle was being repaired.

secondary chemical test of the breath. Respondent failed the test with a result of .154%.

In an official notice dated January 4, 2011, the DMV issued an Order of Revocation of respondent's driving privileges for forty-five days, with an effective date of February 8, 2011. Respondent filed a written objection and specifically requested the appearance of the investigating officer at the administrative hearing. A hearing was scheduled for March 25, 2011. Although a subpoena was issued to Officer Gomez to appear at the hearing, he failed to appear. The hearing examiner rescheduled the hearing to October 18, 2011, for which another subpoena was issued to compel Officer Gomez's appearance. Officer Gomez again failed to appear. The hearing examiner was advised that Officer Gomez was no longer employed by the Moorefield Police Department and that it was extremely unlikely that the DMV would be able to secure his attendance at any future administrative hearings. The administrative hearing was conducted on October 18, 2011, in Officer Gomez's absence.

At the hearing, the DMV offered into evidence the DUI Information Sheet. The Chief of the Moorefield Police Department and Officer Gomez's supervisor, S.D. Reckart, testified that the DUI Information Sheet is a business record kept in the department's ordinary course of business and in accordance with the duty and professional responsibilities of its employee, Officer Gomez. *See* W.Va.R.Evid. 803(6). The DUI Information Sheet was admitted into evidence over respondent's objection. Other than the DUI Information Sheet and Chief Reckart's testimony establishing the foundational requirements for its admission, the DMV presented no additional evidence. Respondent testified and was cross-examined by counsel for DMV.

On May 29, 2013, the OAH entered the Final Order of Chief Hearing Examiner in which it adopted the Decision of the Hearing Examiner that reversed the DMV's order of revocation. In support of its order, the OAH noted that Officer Gomez failed to "specify the speed infraction upon which he based his reasonable suspicion to initiate the traffic stop" in this case. "Rather, the Investigating Officer merely indicated *'speed'* in the 'Vehicle in Motion' section of the DUI Information Sheet." (Emphasis in original). The OAH further noted that respondent testified that although the investigating officer informed him that he was stopped for speeding, Officer Gomez did not advise respondent at what speed he was allegedly traveling. Respondent testified that he did not believe that he was speeding at the time he was stopped. Rather, he contended that he believed he was targeted because he was driving a black sport utility vehicle with Ohio plates late at night.

The OAH found that respondent's testimony directly conflicted with the information in the DUI Information Sheet, upon which the DMV exclusively relied. The OAH further found that, because Officer Gomez did not appear at the administrative hearing to testify about his observations as recorded in the DUI Information Sheet, the DMV was unable to rebut respondent's testimony that he was traveling within the posted speed limit. The OAH also observed that, given Officer Gomez's absence, it was unable to judge the veracity of the information proffered by him in the DUI Information Sheet and that, similarly, respondent was not able to cross-examine him about either his purported observations or the events that allegedly occurred, "which were the sole bas[e]s for the revocation of [respondent's] driving privileges."

The OAH concluded that, "[a]s a result of the conflicting evidence regarding the

2

reasonable suspicion to effectuate the traffic stop offered by [respondent], and [the DMV's] failure to present credible, live testimony to rebut [respondent's] claims, the Hearing Examiner finds that [the DMV] failed to establish whether the Investigating Officer had an articulable, reasonable suspicion to initiate the traffic stop of [respondent's] vehicle on the date of the stated offense." The OAH further concluded that, under West Virginia Code 17C-5A-2(f) (2010), "evidence that the Investigative Officer had a reasonable articulable suspicion to initiate a traffic stop of the motor vehicle driven by [respondent] is crucial to support a determination that reasonable grounds existed to believe that [respondent] had been driving a motor vehicle in this State while under the influence of alcohol, and that he was lawfully arrested for the offense." Finally, relying on *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), the OAH examined the totality of the circumstances in its determination of whether reasonable suspicion was established and concluded that the evidence failed to demonstrate that there was a reasonable articulable suspicion to initiate the traffic stop of respondent's vehicle. As a result, the hearing examiner found that respondent was not lawfully placed under arrest for DUI and that the DMV failed to "meet its burden of proof by a preponderance of the evidence standard that [respondent] committed a violation of W.Va. Code § 17C-5-2." The order of revocation was reversed by order entered May 29, 2013.

The DMV appealed the OAH's order to the Circuit Court of Kanawha County. In an order entered January 24, 2014, the circuit court affirmed. This appeal followed.

The applicable standard of review for these types of cases is as follows:

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

Syl. Pt. 1, *Dale v. Odum*, 233 W.Va. 601, 760 S.E.2d 415 (2014). This deference extends to evidentiary findings made by the OAH. This Court has made clear that "'[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong.' Syl. Pt. 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.,* 191 W.Va. 134, 443 S.E.2d 602 (1994)." *Odum*, 233 W.Va. at __, 760 S.E.2d at 416, syl. pt. 2.

In its first assignment of error, the DMV argues that the circuit court erred in showing a preference for testimonial evidence over documentary evidence. The DMV contends that both the OAH and the circuit court failed to give proper weight to the DUI Information Sheet, which indicated that respondent's vehicle was stopped for "speed." The DMV further contends that respondent's equivocal testimony that he did not believe he was speeding and that "I wasn't going fast . . . . It was 35 where he stopped me. I was coming out of a 25[,]" was not sufficient to rebut the evidence in the DUI Information Sheet.

In *Groves v. Cicchirillo*, this Court noted "'that the fact that a document is deemed admissible under [West Virginia Code § 29A-5-2(b)] does not preclude the contents of the

document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy.'" 225 W.Va. 474, 479, 694 S.E.2d 639, 644 (2010) (quoting *Crouch v. W. Va. Div. of Motor Vehicles*, 219 W.Va. 70, 76 n.12, 631 S.E.2d 628, 634 n.12 (2006).). Furthermore, this Court has repeatedly stated that "'[c]redibility determinations made by an administrative law judge are . . . entitled to deference.' Syl. Pt. 1, in part, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000)." Syl. Pt. 6, *Dale v. Veltri*, 230 W.Va. 598, 741 S.E.2d 823 (2013). In this case, speed was the sole reason noted on the DUI Information Sheet for the stop of respondent's vehicle; however, the DUI Information Sheet failed to include any attendant notation as to the approximate speed at which respondent was allegedly traveling. Despite being twice subpoenaed to testify, Officer Gomez failed to appear and, thus, the DMV was unable to demonstrate how fast respondent was allegedly driving. Likewise, respondent was not afforded the opportunity to cross-examine Officer Gomez on the crucial issue of why he initiated the stop. Respondent testified that did not believe he was speeding and that he "wasn't going fast."

Thus, the OAH was confronted with conflicting evidence between the DUI Information Sheet prepared by Officer Gomez and respondent's testimony at the hearing. "'[T]he discrepancy . . . simply boil[ed] down to a credibility issue.'" *Id*. at 603, 741 S.E.2d at 828 (quoting *Sims v. Miller*, 227 W.Va. 395, 402, 709 S.E.2d 750, 757 (2011)). Therefore, "deference is required 'because the hearing examiner who observed the witness testimony is in the best position to make credibility judgments.'" *Id. Cf. Michael D.C. v. Wanda L.C.,* 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record."); *Gum v. Dudley,* 202 W.Va. 477, 484, 505 S.E.2d 391, 398 (1997) (stating that "[t]he trial court . . . observed the demeanor of the witnesses and other nuances of a trial that a record simply cannot convey."). Finally, we have often stated that "'"a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, [in part,] *In re Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996)' Syllabus Point 1, [in part,] *In re George Glen B.,* 205 W.Va. 435, 518 S.E.2d 863 (1999)." Syl. pt. 1, in part, *In re Travis W.,* 206 W.Va. 478, 525 S.E.2d 669 (1999). Thus, it was within the OAH's sound discretion to determine that respondent had successfully rebutted the presumption of the accuracy of the DUI Information Sheet. *See Groves,* 225 W.Va. at 479, 694 S.E.2d at 644.

In related assignments of error, the DMV argues that the circuit court erred in affirming the OAH's finding that Officer Gomez lacked reasonable suspicion to stop respondent's vehicle. The DMV further argues that the OAH and circuit court erred in ignoring the evidence of DUI that was obtained after the stop.

Under West Virginia Code § 17C-5A-2(f)(1) and (2) (2010), the applicable statute in effect at the time of respondent's arrest, the OAH is required to make the specific findings of, inter alia, "[w]hether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol . . . ." and "[w]hether the person was lawfully placed under arrest for an offense involving driving under the

4

influence of alcohol, . . . or was lawfully taken into custody for the purpose of administering a secondary test[.]" *Id.*, in relevant part.[2]

This Court has held that "'[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]' Syl. Pt. 1, in part, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994)." Syl. Pt. 3, *Dale v. Ciccone*, 233 W.Va. 652, 760 S.E.2d 466 (2014). We have also explained that "'[w]hen evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police.'" *Id.* at syl. pt. 4 (quoting *Stuart,* 192 W.Va. at 428, 452 S.E.2d at 886, syl. pt. 2).

Furthermore, in *Ciccone*, we clarified that, under the applicable version of West Virginia Code § 17C-5A-2(f), "'absent a valid investigatory stop, a finding that the ensuing arrest was lawful cannot be made.'" 233 W.Va. at __, 760 S.E.2d at 473 (quoting *Odum*, 233 W.Va. at __, 760 S.E.2d at 420). Accordingly, "an individual cannot be considered lawfully arrested for DUI where law enforcement did not have the requisite articulable reasonable suspicion to initiate the underlying traffic stop." *Ciccone*, 233 W.Va. at__, 760 S.E.2d at 473.

---

[2] West Virginia Code § 17C-5A-2(f) (2010) more fully states as follows:

In the case of a hearing in which a person is accused of driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, or accused of driving a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or accused of driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight, the Office of Administrative Hearings shall make specific findings as to: (1) Whether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol, controlled substances or drugs, or while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or to have been driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight; (2) whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test: Provided, That this element shall be waived in cases where no arrest occurred due to driver incapacitation; (3) whether the person committed an offense involving driving under the influence of alcohol, controlled substances or drugs; and (4) whether the tests, if any, were administered in accordance with the provisions of this article and article five [§§ 17C-5A-5 et seq.] of this chapter.

As this Court has already determined, the OAH did not err in finding that respondent successfully rebutted the presumption that the DUI Information Sheet was accurate to the extent that it indicated that respondent was exceeding the speed limit when he was stopped. Thus, the investigating officer in this case did not have the requisite articulable reasonable suspicion to initiate a traffic stop and, thus, respondent was not lawfully placed under arrest. Therefore, neither the OAH nor the circuit court erred in not considering evidence garnered as a result of the invalid stop. *See Clower v. W.Va. Dept. of Motor Vehicles*, 223 W.Va. 535, 543, 678 S.E.2d 41, 49 (2009), *superseded by statute as stated in Dale v. Arthur*, No. 13-0374 (W.Va. Sup. Ct., March 28, 2014) (memorandum decision) (upon finding that motorist "was not lawfully placed under arrest because [investigating officer] did not have the requisite articulable reasonable suspicion to initiate a traffic stop of Mr. Clower's vehicle[]" under 2004 version of 17C-5A-2(e), which required lawful arrest, Court concluded revocation was improper and did not address evidence that motorist had slurred speech, smelled of alcohol, failed field sobriety tests, and had blood alcohol content above legal limit.)[3]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISSENTING AND WRITING SEPARATELY:**

Justice Allen H. Loughry II

LOUGHRY, Justice, dissenting:

Unquestionably, the respondent was drunk while driving in Hardy County on November 28, 2010. According to the evidence in the DUI Information Sheet, the respondent was speeding; admitted to having consumed four beers; smelled of alcohol; had slurred speech and bloodshot, watery eyes; was unsteady when standing and walking; and failed three field sobriety

---

[3] The DMV argues that the circuit court erred in referring to 91 C.S.R. § 1-3.7.2 because this rule was not in effect at the time the events herein transpired. The rule states, inter alia, "[t]hat where the arresting officer fails to appear at the hearing, but the licensee appears, the revocation . . . may not be based solely on the arresting officer's affidavit or other documentary evidence." We note that the OAH, the fact finder in this case, did not cite to or otherwise rely on this rule in its order reversing the revocation of respondent's driving privileges.

tests. The respondent's insobriety was confirmed when he registered a blood alcohol content of .154 on the secondary chemical breath test—far above the legal limit.

Although the arresting officer was unavailable to appear and testify in the driver's license revocation hearing, the officer's written DUI Information Sheet was admissible evidence. *See* Syl. Pt. 3, *Crouch v. W.Va. Div. of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006). Indeed, there is a rebuttable presumption as to the accuracy of the information in the DUI Information Sheet. *Id.*, 219 W.Va. at 76 n. 12, 631 S.E.2d at 634 n. 12; *Dale v. Odum*, 233 W.Va. 601, __, 760 S.E.2d 415, 423 (2014).

In a weak attempt to rebut the evidence in the DUI Information Sheet, the respondent offered only his self-serving testimony that he did not believe that he was speeding at the time he was stopped. However, when considering the respondent's high level of inebriation at the time of the traffic stop, it was clearly wrong for the OAH to have given the respondent's unsupported "belief" more weight than the officer's report. When a hearing examiner's finding of fact is clearly wrong, it is not to be accorded deference on appeal. Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996); *accord* W.Va. Code § 29A-5-4(g) (1998) (specifying grounds for reversing decision of administrative agency, including when findings are clearly wrong).

The Legislature has declared that "[t]he principal question at the [administrative license revocation] hearing shall be whether the person did drive a motor vehicle while under the influence of alcohol . . . or did drive a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight[.]" W.Va. Code § 17C-5A-2(e) (2010). The evidence in this case undisputably demonstrates that the answer to this question is in the affirmative. The DMV Commissioner's revocation order should have been upheld. For these reasons, I respectfully dissent.