# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Adam Holley,**
**Acting Commissioner of the West Virginia**
**Division of Motor Vehicles,**
**Plaintiff Below, Petitioner**

**FILED**

**September 9, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 18-0637** (Ohio County 17-P-2)

**Katie Crook,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Adam Holley, Acting Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), by counsel Elaine L. Skorich, appeals the Circuit Court of Ohio County's June 14, 2018, order reversing the final order of the Office of Administrative Hearings ("OAH"), which affirmed the DMV's order revoking respondent's driver's license.[1] Respondent Katie Crook, by counsel Joseph J. John, filed a response. Petitioner filed a reply.

The Court has considered the parties' briefs and record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for entry of an order reinstating the DMV's order of revocation.

Just after midnight on April 7, 2013, Oglebay Park ("Oglebay" or "park") rangers reported a vehicle parked on the shoulder of the road to the Ohio County Sheriff's Department and requested that officers check on the vehicle. The vehicle was parked in a section of the park where individuals pull off the road to sled or watch golfers; however, given the time, no events were occurring at Oglebay.

Sergeant T. Gessler arrived at the vehicle first and Deputy Dustin English responded shortly after. The officers observed respondent asleep in the driver's seat of the vehicle, alone, with the engine running. To wake her, the officers had to get into the vehicle, where they smelled alcohol. After the officers awakened respondent, Deputy English noted "a certain level of

---

[1] At the time of the filing of the appeal in this case, Patricia S. Reed was commissioner of the DMV and named petitioner. Ms. Reed retired on April 1, 2019, and Adam Holley succeeded her as acting commissioner. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

1

intoxication just upon getting her out of the vehicle." The officers then administered the horizontal gaze nystagmus, walk and turn, and one-leg-stand field sobriety tests, all of which respondent failed. After respondent's preliminary breath test showed a blood alcohol concentration of 0.19%, she was placed into custody for driving under the influence ("DUI") and taken to the Sheriff's Department for processing and a secondary chemical test of the breath.

At the Sheriff's Department, respondent's secondary test showed a blood alcohol concentration of 0.171%. Deputy English then read respondent her *Miranda* rights[2] and conducted a post-arrest interview, during which she admitted that she had been driving, was heading home, and had been drinking an unknown quantity of beer for the three hours preceding her arrest.

The DMV issued an order revoking respondent's driving privileges on April 26, 2013. Respondent filed written objections to this order of revocation and requested a hearing before the OAH. Respondent included a "Statement of Grounds Upon Which Respondent Claims That The Suspension or Revocation Should Be Dismissed or Modified" ("Statement of Grounds") with her written objections, which set forth thirty claimed errors.

The OAH held the requested hearing on March 26, 2015. Deputy English testified that after finding respondent in the driver's seat of a running vehicle, he and Sergeant Gessler concluded that she had driven the vehicle to the location at which she was found. Deputy English acknowledged, however, that he did not see respondent driving; that there was no evidence that Sergeant Gessler or the park rangers had observed her driving; that, initially, because he "did not see a vehicle in motion," he did not believe he had probable cause to arrest her; and that Sergeant Gessler, Deputy English's superior, instructed him to make the arrest.

Respondent's counsel also elicited the following testimony:

Q:      [Respondent] certainly could have moved over in the passenger seat and turned the car on to turn the heat on, correct?

A:      Correct.

Q:      And, do you know how long the vehicle was there?

A:      I don't know.

Q:      It could have been there for hours, correct?

A:      Correct.

Q:      Isn't it true, [Deputy] English, that that car could have been driven there by someone other than [respondent]?

A:      Correct.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Q:     Her boyfriend could have driven it there?

A:     Yes.

Following and despite this testimony, Deputy English testified twice more that he nonetheless concluded that respondent drove the vehicle to the spot at which it was parked.

> The OAH affirmed the order of revocation finding that
>
> counsel's suggestion that someone else drove the vehicle to the location and left an intoxicated female to sleep on the side of the road is arbitrary given the area is unused and uninhabited at night. The totality of the circumstances in this matter do indicate that the [respondent's] vehicle could not otherwise be located where it was unless it was driven there by the [respondent].

The OAH also gave little credit to Deputy English's apprehension in arresting respondent, noting that an officer need not actually see someone operate a motor vehicle to charge that person with DUI and concluding that his lack of confidence "in this specific situation is a product of individual experience and training." Finally, the OAH found that the community caretaker doctrine applied to the officers' interaction with respondent: "[Deputy English's] testimony demonstrated that his investigation was based solely on the safety and welfare of the [respondent].[3] In fact, in this case, there was also the initial call from the Oglebay Park Ranger, which initiated the [i]nvestigating [o]fficer's investigation."

Respondent appealed the OAH's final order to the circuit court, which reversed the OAH. The court found that the DMV did not meet its burden of establishing "that the vehicle in which [respondent] was found sleeping and intoxicated[] could not have otherwise been located where it was unless she drove it there" in light of Deputy English's testimony that someone else could have driven it, respondent could have moved from the passenger seat to the driver's seat, no one witnessed respondent drive the vehicle, the vehicle was in a place where people were permitted to park, and no one knew how long the car had been parked. In further support of this finding, the court cited to Deputy English's testimony that he did not believe he had reasonable grounds to believe respondent was DUI.

The circuit court also rejected the OAH's conclusion regarding the applicability of the community caretaker doctrine, stating that neither the park rangers nor Sergeant Gessler, who arrived at the scene prior to Deputy English, perceived an immediate need to act given that Sergeant Gessler

> did not take any action other than to call out for another deputy and wait for Deputy English to arrive. If the Ranger and Sgt. Gessler truly believed there was an

---

[3]As discussed below, the community caretaker doctrine is one of the limited exceptions to the warrant requirement.

immediate need to act for the safety of the [respondent] or others, they certainly would not have waited around for another deputy to arrive.

The court further found that "Sgt. Gessler['s] call for another deputy was intended for the purpose to arrest, or the detection, investigation or acquisition of criminal evidence, or else Sgt. Gessler would have taken immediate action to get the [respondent] out of the vehicle and turn the vehicle off." The court entered its order reversing the OAH on June 14, 2018, and this appeal followed.

We have previously set forth our standard of review as follows:

On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). The statutory standards referenced in *Muscatell* provide that

[t]he court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, or decision or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g). Of specific relevance to this case, we have held that

[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law de novo.

4

*Muscatell*, 196 W. Va. at 590, 474 S.E.2d at 520, Syl. Pt. 2. Finally, we note that "[t]he 'clearly wrong' and 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid so long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

Petitioner raises three assignments of error on appeal. Petitioner first contends that the circuit court erred by relying on facts not in evidence and in substituting its own judgment for that of the OAH in concluding that the officers' interaction with respondent did not fall within the community caretaker exception to the warrant requirement. Second, petitioner asserts that the circuit court erred in relying on Deputy English's speculative responses to hypothetical questions regarding who could have driven respondent's vehicle to conclude that the DMV failed to establish that her vehicle "could not have otherwise been located where it was unless she drove it there." Finally, petitioner claims that the circuit court erroneously applied criminal standards to its review, citing in support of this claim respondent's "Statement of Grounds" and arguing that the "Statement of Grounds" contained objections applicable only in criminal proceedings.

With respect to the applicability of the community caretaker doctrine to the officers' actions, we have long held that "[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions." Syl. Pt. 1, in part, *State v. Moore*, 165 W. Va. 837, 272 S.E.2d 804 (1980), overruled in part on other grounds by *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991). We have recognized the community caretaker doctrine as one such exception to the general warrant requirement. Syl. Pt. 6, *Ullom v. Miller*, 227 W. Va. 1, 705 S.E.2d 111 (2010). For an encounter to come within this exception,

> the State must establish that: (1) given the totality of the circumstances, a reasonable and prudent police officer would have perceived a need to promptly act in the proper discharge of his or her community caretaker duties; (2) Community caretaking must be the objectively reasonable, independent and substantial justification for the intrusion; (3) the police officer's action must be apart from the intent to arrest, or the detection, investigation, or acquisition of criminal evidence; and (4) the police officer must be able to articulate specific facts that, taken with rational inferences, reasonably warrant the intrusion.

*Id.* at 4-5, 705 S.E.2d at 114-15, Syl. Pt. 7, in part.

In concluding that the DMV failed to satisfy the first and third factors of the community caretaker exception, the circuit court found no evidence of a need to promptly act because Sergeant Gessler "did not take any action other than to call out for another deputy and wait for Deputy English to arrive," and that Sergeant Gessler's intention in calling for Deputy English was "to arrest, or [for] the detection, investigation, or acquisition of criminal evidence" or else Sergeant Gessler would have taken the immediate action of removing respondent from her vehicle and turning the vehicle off. These findings, however, are not supported by the record. There was no evidence that Sergeant Gessler called for Deputy English. Rather, the evidence showed that the two officers responded to the park rangers' call, with Sergeant Gessler arriving first. Furthermore,

5

there was no evidence that Sergeant Gessler was not working to awaken respondent prior to Deputy English's arrival.

The OAH's conclusion on the applicability of the community caretaker doctrine, on the other hand, was founded on the facts that respondent was unresponsive in the driver's seat of her running vehicle, the officers had to enter her vehicle before she became "coherent," and the officers were responding to the Oglebay rangers' request that officers check on this vehicle. Considering the totality of the circumstances, the OAH concluded that Deputy English demonstrated that the investigation was based solely on respondent's safety and welfare. "[A] reviewing court is obligated to give deference to factual findings rendered by an administrative law judge," and it "is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations." Syl. Pt. 1, in part, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000). Also, "[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts." *Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995). Judicial interference with a finding of fact is warranted only where the finding is "clearly wrong." *See Modi v. W. Va. Bd. of Med.*, 195 W. Va. 230, 465 S.E.2d 230 (1995). Because the circuit court gave no deference to the OAH's factual findings on this issue and, in fact, made findings contrary to the record, we find that it erred in concluding that the community caretaker doctrine did not apply to the officers' encounter with respondent.

We likewise find that the circuit court erred in reversing the OAH on the ground that the DMV failed to establish that respondent's vehicle "could not have otherwise been located where it was unless she drove it there." To reach that conclusion, the circuit court relied on Deputy English's testimony regarding who could have driven respondent's vehicle, and it noted that respondent "could have moved from the passenger seat to the driver's seat" and that no one saw respondent driving her vehicle. The circuit court also highlighted Deputy English's testimony that he did not believe he had reasonable grounds to conclude that respondent was DUI or had probable cause to arrest her for DUI.

In *Carte v. Cline*, we held that a police officer need not

actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person.

Syl. Pt. 3, in part, 200 W. Va. 162, 488 S.E.2d 437 (1997). Deputy English's belief that he did not have a basis to arrest respondent for DUI was predicated on the fact that he "did not see a vehicle in motion." As we made clear in *Carte*, however, an officer is not required to observe a person operate a motor vehicle to charge that person with DUI. Moreover, despite his mistaken belief, Deputy English determined that respondent drove the vehicle in which she was found:

Q:      Okay. Did you conclude that she drove the vehicle?

A:      We did. We came to the conclusion she did.

6

. . .

Q:        Okay. And, [Deputy] English, what did you conclude as a result of your investigation in this matter?

A:        That [respondent] was operating a vehicle.

. . .

Q:        And you testified on [d]irect that you did conclude, however, she did drive the vehicle.

A:        Yes.

. . .

Q:        Yet you concluded she did drive it there.

A:        Yes.

Indeed, in her post-arrest interview, respondent admitted that she had been driving after drinking beer, the amount of which she was unable to quantify. It was also undisputed that she was found in the driver's seat with the engine running and that the car was registered in her name. Similar circumstances have been found to provide reasonable grounds to believe an individual drove while intoxicated, despite the individual not having been observed driving. *See Groves v. Cicchirillo*, 225 W. Va. 474, 481, 694 S.E.2d 639, 646 (2010) (finding reasonable grounds where the driver owned the vehicle, he was walking unsteadily near where his vehicle rested, no one else was at the scene, and no evidence was offered that someone else drove); *Carte*, 200 W. Va. at 163-64, 167, 488 S.E.2d at 438-39, 442 (finding reasonable grounds where the driver was "passed out with the engine running, the transmission in drive, and his foot on the brake[;]" admitted to drinking and driving; and failed the field sobriety tests).

With respect to the officer's speculation that someone else *could* have driven respondent's vehicle or that it *could* have been parked for hours, we note that no one else was found at the scene. In fact, respondent presented no evidence or testimony on her behalf, let alone testimony or evidence that someone else was driving her vehicle. To the extent that Deputy English's testimony created a conflict in the evidence, the OAH considered and weighed the evidence, and resolved any conflict by concluding that respondent's "[c]ounsel's suggestion that someone else drove the vehicle to the location and left an intoxicated female to sleep on the side of the road is arbitrary given the area is unused and uninhabited at night." The OAH observed Deputy English's demeanor and ultimately found the officer's conclusion that respondent drove the vehicle while intoxicated more credible than his testimony following counsel's attempt to interject a contrary idea. Credibility determinations "are generally held to be within the sound discretion of the administrative law judge and are entitled to deference." *Dale v. Veltri*, 230 W. Va. 598, 603, 741 S.E.2d 823, 828 (2013) (citation omitted). Additionally, the clearly erroneous standard "precludes

a reviewing court from reversing a finding of the trier of fact simply because the reviewing court would have decided the case differently." *Brown v. Gobble*, 196 W. Va. 559, 565, 474 S.E.2d 489, 495 (1996) (citation omitted). Accordingly, we find that there were sufficient facts to support the OAH's conclusion that respondent was driving a motor vehicle while under the influence of alcohol, and the OAH's findings were not clearly wrong in light of the probative and reliable evidence in the record.

Although the errors identified above warrant reversal, we find no merit to petitioner's final assignment of error concerning the circuit court's alleged application of criminal standards. The "Statement of Grounds" was appended to respondent's challenge before the OAH, not the circuit court. Moreover, petitioner has failed to identify any portions of the circuit court's order that evidence application of inapplicable criminal standards. Accordingly, petitioner has not demonstrated error in this regard.

For the foregoing reasons, the circuit court's June 14, 2018, order is hereby reversed, and the case is remanded for entry of an order reinstating the DMV's order of revocation.

Reversed and remanded.

**ISSUED**: September 9, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison