FILED

**April 15, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0225 – *Frazier v. Null*

WOOTON, J., dissenting:

By remanding to the circuit court and directing that respondent's driver's license revocation be reinstituted, the majority exceeds its statutory authority for review of administrative proceedings and ignores decades of our civil license revocation jurisprudence—all because it lacks a procedurally sustainable method for remanding this action. In this case the Office of Administrative Hearings (hereinafter "OAH") did not reach the ultimate issue—whether respondent was driving under the influence ("DUI")—because it believed the DMV could not legally prevail due to the destruction of the blood test results. Therefore, the OAH did not so much as dignify, much less resolve, a material dispute in the evidence, or determine whether respondent was DUI.[1] For decades this Court has found this failure to resolve credibility issues and/or reach the ultimate issue of DUI to be reversible error necessitating remand for resolution of such disputes. However, because the OAH has been disbanded, the majority culls the record for evidence of DUI and adjudicates this matter *itself*—without statutory or other authority to do so. Accordingly, I respectfully dissent.

In the instant case the only evidence presented at the administrative hearing regarding respondent's driver's license revocation was the DUI Information Sheet and the

---

[1] On appeal of the OAH's ruling, the circuit court recognized and discussed the conflict in the evidence; however, because it agreed with OAH's legal conclusion that the absence of test results was dispositive, it did not address the OAH's failure to resolve the credibility issue or determine whether respondent was DUI.

1

live testimony of respondent Douglas Null; the investigating officer did not appear. Counsel for DMV proffered that a blood sample was discarded upon dismissal of the criminal proceedings before any drug testing could be performed. As to the blood test, the DUI Information Sheet indicated that the "request for a blood sample [was] directed by the arresting officer" and that the "suspect [did not] request blood sample[.]" However, during his testimony respondent expressly contradicted this information and testified he requested the blood test, not the officer:

> Q.    And did you, in fact, request a blood test?
> A.    Absolutely.

Respondent elaborated, ". . . I absolutely wanted a blood test, because it was going to prove my innocence." This conflicting testimony became immaterial to the OAH, however, because it concluded that, regardless of who requested the blood test, the absence of results prejudiced respondent's due process rights and required reversal of the revocation order. Accordingly, the OAH never 1) resolved the credibility issue as to who requested the test; or 2) made a determination as to whether respondent was DUI. The former controls the remedy, if any, afforded due to the absence of test results, and the latter is, quite plainly, the entire purpose of the proceeding.

Instead, after a recitation of "findings of fact" derived exclusively from the DUI Information Sheet—and without any reference whatsoever to respondent's testimony, as discussed *infra*—the OAH embarked upon a "discussion" of our caselaw where blood testing results were not made available to the driver. Under "conclusions of law," the

2

hearing examiner stated that "it is the position of the Chief Hearing Examiner" that "individuals who voluntarily submit to a blood sample at the request of the Investigating Officer should be afforded the same due process as those who demand a blood test[.]" As a result, the hearing examiner concluded that failure to provide respondent with his blood test results was a denial of his "statutory and due process rights" and reversed the revocation order. Believing it to be legally foreclosed from doing so, at no point in the "discussion" or "conclusions of law" did the OAH remotely conclude that respondent was, in fact, DUI.

Regardless, the majority highlights items in the "checked" boxes in the OAH's final order which found that the officer "had reasonable grounds to believe" respondent was DUI, that respondent was "lawfully arrested," and that there was "evidence" of the use of alcohol or drugs—each of which is a statutorily required preliminary finding before proceeding to the ultimate issue. *See* W. Va. Code § 17C-5A-2(f) (2015). However, none of these findings is a substitute for the ultimate question to be determined: whether the driver was, in fact, DUI.[2] "The principal question at the [administrative revocation] hearing shall be whether the person did drive a motor vehicle

---

[2] This finding is not merely perfunctory, particularly where a driver disputes that he or she was DUI and provides testimony contesting the content of the DUI Information Sheet, just as occurred in the instant case. The administrative hearing process is not designed to be a mere "rubber stamp" of an officer's DUI paperwork: "The purpose of these rules is not to burden an administrative agency with proving or recording the obvious. The purpose is to allow a reviewing court (and the public) to ascertain that the critical issues before the agency have indeed been considered and weighed and not overlooked or concealed." *Muscatell v. Cline*, 196 W. Va. 588, 598, 474 S.E.2d 518, 528 (1996).

while under the influence of alcohol, controlled substances or drugs[.]" W. Va. Code § 17C-5A-2; *see also Carte v. Cline*, 194 W. Va. 233, 238, 460 S.E.2d 48, 53 (1995) ("The obvious and most critical inquiry in a license revocation proceeding is whether the person charged with DUI was actually legally intoxicated." (footnote omitted)).

To circumvent the absence of a finding on the ultimate issue, the majority cites these "express findings" regarding reasonable suspicion and lawful arrest to create the appearance that it is merely affirming a conclusion reached by the OAH. Recognizing of course it cannot affirm a ruling never reached, the majority tellingly states that, based upon certain facts in the OAH order, "*we* conclude that Mr. Null was driving under the influence of controlled substances or drugs[.]" (Emphasis added).

Judicial review of administrative cases is strictly limited by statute. At the circuit court level, appeal of an administrative agency's final order is taken "upon the record made before the agency" and reversal or vacation may only be made upon certain conditions, none of which permit the circuit court to hear the matter anew. *See* W. Va. Code §§ 29A-5-4(f), -4(g). This Court is similarly constrained:

> On appeal of an administrative order from a circuit court, this Court is *bound by the statutory standards contained in W. Va. Code § 29A-5-4(a)* and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

4

*Muscatell,* 196 W. Va. 588, 474 S.E.2d 518, syl. pt. 1 (emphasis added). Nothing in our system of administrative law permits this Court to determine, *in the first instance*, whether a driver was DUI. Yet the majority does precisely that: cherry-picks the scant record for "evidence" suggesting that respondent was DUI and adjudicates the matter itself.

I have previously expressed my staunch disagreement with our caselaw indicating that a driver has no automatic entitlement to blood test results if the officer requests the test, and with our decisions holding that even if the driver requests the test, failure to provide results is not necessarily dispositive of the case.[3] Under our law as it presently exists, the OAH and circuit court erred in concluding that regardless of who requested the blood test, the revocation must be reversed due to the absence of results. Under our presently constituted law, if a driver requests the testing, the consequences of failure to provide those results are governed by a multi-factorial test to be applied by the finder of fact. *See Talbert*, 245 W. Va. 293, 858 S.E.2d 918, syl. pt. 6. If the officer requests the testing and the driver does not specifically request the results, the failure to provide the results is of no consequence. *See* Syl. Pt. 4, *Frazier v. Bragg,* 244 W. Va. 40, 851 S.E.2d 486 (2020).

---

[3] *See Frazier v. Goodson*, No. 20-0236, 2021 WL 1821454, at *4 (W. Va. May 6, 2021) (memorandum decision) (Wooton, J., dissenting); *Frazier v. Talbert*, 245 W. Va. 293, 305, 858 S.E.2d 918, 930 (2021) (Wooton, J., dissenting).

Therefore, the initial issue which must be determined at the administrative level when testing results are not available is *who requested the test*. While the majority correctly notes that the OAH ostensibly credited the officer with requesting the test, it is patently incorrect that the OAH "evidently determined that [respondent's] testimony on this issue . . . was less credible." In fact, the OAH did not reference respondent's testimony at all, much less weigh in on the relative credibility of respondent and the DUI Information Sheet. This is well-established reversible error:

> Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version *unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court.*

*Muscatell*, 196 W. Va. 588, 474 S.E.2d 518, syl. pt. 6 (emphasis added).

The *Muscatell* Court correctly determined that in its proper appellate role, it could not rule on the merits of the case where there was a "direct conflict in [the investigating officer's] critical testimony, for which we have before us no explanation or evaluation by the hearing examiner or the Commissioner." *Id*. at 598, 474 S.E.2d at 528. The Court explained:

> Nothing in the findings of fact of the Commissioner advises this Court why the Commissioner resolved this conflict in the testimony of the trooper in favor of the direct testimony and disregarded the cross-examination. We have no separate evaluation of the evidence by the hearing examiner who observed the demeanor of the witness on this critical issue before us. We have said, with respect to decisions of

6

administrative agencies following from findings of fact and conclusions of law proposed by opposing parties, that the agency must rule on the issues raised by the opposing parties with sufficient clarity to assure a reviewing court that all those findings have been considered and dealt with, not overlooked or concealed. We have also said that in requiring an order by an agency in a contested case to be accompanied by findings of fact and conclusions of law, "the law contemplates a reasoned, articulate decision which sets forth the underlying evidentiary facts which lead the agency to its conclusion. . . ." . . . . Indeed, a reviewing court cannot accord to agency findings the deference to which they are entitled unless such attention is given to at least the critical facts upon which the agency has acted.

*Id*. at 598, 474 S.E.2d at 528 (citations omitted); *see also White v. Miller*, 228 W. Va. 797, 812, 724 S.E.2d 768, 783 (2012) (Workman, J., concurring in part and dissenting in part) ("To the extent that the Commissioner did not find the petitioner's attacks on the subjective evidence persuasive or credible, he was obligated under our caselaw to offer a 'reasoned and articulate' resolution of those issues and explain the choices he made with respect to the evidence."); *Choma v. W. Va. Div. of Motor Vehicles*, 210 W. Va. 256, 259, 557 S.E.2d 310, 313 (2001), *overruled on other grounds by Miller v. Epling*, 229 W. Va. 574, 729 S.E.2d 896 (2012) ("[T]he Commissioner's decision cannot arbitrarily disregard . . . contradictory evidence.").[4]

---

[4] *Cf. Dale v. Veltri*, 230 W. Va. 598, 604, 741 S.E.2d 823, 829 (2013) (finding no *Muscatell* violation where final order "clearly identified the conflict between the DUI Information Sheet and the testimony of [the driver]" and "subsequently resolved that conflict by explaining" that although driver disputed officer's testimony, he failed to adequately explain his blood alcohol concentration or manner of driving).

The only remedy available to this Court for such an error is equally well-established: reversal and remand to the circuit court with directions to remand to the OAH for this credibility-intensive factual issue to be resolved. *See Muscatell*, 196 W. Va. at 598-99, 474 S.E.2d at 528-29 (reversing and remanding to circuit court with directions to remand to administrative agency to resolve unaddressed conflicts in evidence); *see also Clarke v. W. Va. Bd. of Regents*, 166 W. Va. 702, 716-17, 279 S.E.2d 169, 178-79 (1981) ("Remanding the cause with directions that the conclusions of the hearing examiner be supported with reasons and evidence has been the relief employed in other circumstances involving inadequate findings by administrative agencies."). Upon resolution of the factual conflict regarding who requested the test, application of the appropriate resulting legal standard may then ensue.

Not only has reversal and remand for resolution of unaddressed conflicts in evidence been the required remedy for decades, but it has also more specifically been this Court's exclusive remedy when blood testing issues of precisely this type have preempted the OAH from reaching the ultimate issue of DUI. In fact, the very case upon which the majority relies in concluding that the absence of blood testing results was of no consequence in this matter states as much. In *Bragg*, the Court held that where the officer requests blood testing and the driver fails to request those results, the absence of such results is "simply not at issue" and provides no relief to a driver. 244 W. Va. at 48, 851 S.E.2d at 494. Notably, the OAH in *Bragg* had made a ruling identical to the one in the instant case, i.e. that the absence of blood testing results was a deprivation of due process

rights and therefore did not reach the issue of DUI.[5]  *Id.* at 49, 851 S.E.2d at 495.  The required remedy as identified by this Court was remand for determination of the ultimate issue of DUI:

> Having concluded that the OAH erred in reversing the order of revocation based exclusively upon the fact that the blood sample withdrawn from Mr. Bragg was not tested or made available to him for independent testing, *and because the OAH failed to otherwise evaluate the evidence of record, we remand this case for a determination of whether there was sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of Mr. Bragg's driver's license for driving under the influence of alcohol, controlled substances and/or drugs.*

*Id.* (emphasis added).  Not surprisingly, this has unfailingly been the required remedy of this Court in the litany of subsequent cases where, just as in the instant case, the OAH fails to make the ultimate determination of whether the driver was DUI because it believed the absence of blood testing results to be dispositive.  *See Frazier v. Workman*, No. 20-0035, 2021 WL 653201, at *3 (W. Va. Feb. 19, 2021) (memorandum decision) ("Having determined that the circuit court erred in affirming the OAH's order reversing the revocation of respondent's license based only on the fact that respondent's blood sample was not tested, and because the OAH failed to otherwise evaluate the evidence of record, we remand this case for a determination of whether there was sufficient proof under the

---

[5] In *Bragg,* the wording of OAH's conclusion was nearly identical to that contained in the order in this case: "'The Investigating Officer's failure to test blood or to make blood evidence available to [Mr. Bragg] for further testing denied Mr. Bragg[] [his] statutory due process rights under W. Va. Code § 17C-5-9 and is grounds for reversal of the [Commissioner's] Order of Revocation[.]'"  *Bragg*, 244 W. Va. at 44, 851 S.E.2d at 490.

preponderance of the evidence standard to warrant the administrative revocation of respondent's driver's license.").[6]

It is readily apparent that the majority treats the instant matter differently than our long line of precedents due to practical considerations: the OAH no longer exists and is therefore unavailable for remand. As footnoted by the majority, the OAH was disbanded by operation of West Virginia Code § 17C-5C-1a(d) (2020) as of July 1, 2021. In anticipation of the logistical issue presented by this dissolution as to cases requiring remand, the Court required supplemental briefing by the parties in this case on that very issue. Apparently unsatisfied with the parties' respective offerings on that front, the majority neither resolves the issue nor mentions it in its opinion. Instead, it avoids the issue altogether by taking on the role of the now-defunct OAH and adjudicating the DUI revocation itself. It does so because the dissolution of the OAH leads to the inescapable conclusion that matters presently on appeal which require remand must simply be dismissed.

---

[6] *See also Frazier v. Gilbert*, No. 20-0310, 2021 WL 2581707, at *4 (W. Va. June 23, 2021) (memorandum decision); *Frazier v. Parker*, No. 20-0790, 2021 WL 2581718, at *3 (W. Va. June 23, 2021) (memorandum decision); *Frazier v. Murphy*, No. 20-0092, 2021 WL 1821456, at *3 (W. Va. May 6, 2021) (memorandum decision); *Goodson*, 2021 WL 1821454, at *3; *Frazier v. Fazio*, No. 20-0102, 2021 WL 1821450, at *3 (W. Va. May 6, 2021) (memorandum decision); *Frazier v. Fowler*, No. 20-0076, 2021 WL 1110376, at *3 (W. Va. Mar. 23, 2021) (memorandum decision); *Frazier v. Bowman*, No. 20-0034, 2021 WL 1110372, at *4 (W. Va. Mar. 23, 2021) (memorandum decision); *Frazier v. Agin*, No. 20-0038, 2021 WL 1110653, at *3 (W. Va. Mar. 23, 2021) (memorandum decision).

In that regard, DMV concedes that certain administrative DUI revocation cases, such as the instant case, which were not "before" the OAH as of its termination but pending on appeal either in circuit court or before this Court, are not addressed in West Virginia Code § 17C-5C-1a. It further concedes that these particular types of administrative DUI revocation cases were not transferred to circuit court.[7] DMV takes the position that as a "gap-filling" measure, DMV may hear cases requiring remand and perform any evidentiary fact-finding necessary, just as it did prior to 2010 and the creation of OAH.[8] With respect to cases pending appeal but requiring remand for further

---

[7] In contrast to the Legislature's silence as to administrative revocation appeals such as the case at bar, it directed other license revocation appeals to be "transferred to the circuit court for the circuit in which the event giving rise to the contested decision of the Commissioner of the Division of Motor Vehicles occurred." W. Va. Code §§ 17C-5C-1a(b), -1a(c)(2). Those appeals, however, do not include the type of administrative revocation at issue in the instant case, which was a revocation pursuant to West Virginia Code § 17C-5C-3(3); these appeals were expressly exempted from the transfer to circuit court. *See id.* 17C-5C-1a(b), -1a(c)(2) (transferring jurisdiction over "appeals described in § 17C-5C-3 of this code, *except for those described in § 17C-5C-3(3)*" (emphasis added)).

[8] DMV maintains that administrative revocations remain, effectively, "contested cases" under the Administrative Procedures Act and may be handled by the agency as such. It points specifically to the administrative hearing procedures outlined in West Virginia Code of State Rules § 91-1-3 and asserts that it may hear the cases pursuant to those rules.

However, DMV points to absolutely no statutory authority currently granted to it to hear appeals of these type of administrative drivers' license revocations. The Legislature plainly sought to strip DMV of authority to hear these matters in 2010 with the creation of the OAH. Significantly, when the Legislature dissolved the OAH in 2020, it did not return these matters to the DMV for handling as before, but rather rolled them into the criminal process. There simply is no longer an administrative process for these type of DUI license revocations. Moreover, the mere existence of the APA does not equate to statutory authority to hear these cases. The APA is simply a process—it is not a grant of legislative authority to exercise jurisdiction particularly where matters were specifically carved out of (continued . . .)

11

proceedings at the time OAH terminated, the legislature's intention may not be readily apparent, but it defies logic to suggest that the intention was for the DMV to hear those cases. Such a suggestion is contrary to express legislative intention going back to 2010, when it stripped DMV of that authority by creating an entirely new entity to adjudicate such administrative revocations. Even the majority, in an opinion crafted to yield the result sought by the DMV, did not embrace that suggestion. Instead, the majority broke new ground and for the first time established the Supreme Court of Appeals as a fact-finding entity.

Although the statute does not expressly authorize dismissal of pending appeals requiring remand, there simply is no other recourse for cases which now require additional fact-finding or further proceedings by OAH. Importantly, however, this recourse is entirely consistent with the Legislature's stated appetite for dismissal of certain of these cases. The statute terminating the OAH provides that any matter pending before it as of July 1, 2021 "shall be dismissed." *Id*. § 17C-5C-1a(c)(1) ("If any appeal of a revocation or suspension order, described in § 17C-5C-3(3) of this code, is pending before

that process through the enactment of the now-defunct statutory administrative revocation procedure.

More importantly, there is no indication the Legislature intended these revocations to revert to a run-of-the-mill "contested case" administrative process—quite the contrary. Since 2010, the Legislature appears to have been attempting to create greater separation between DMV and the adjudication of administrative DUI revocations. As such, DMV asks this Court to create an adjudicatory process out of thin air—a process expressly abrogated in 2010 by the Legislature.

12

the [OAH] on or after July 1, 2021, the underlying revocation or suspension order shall be dismissed.") This demonstrates that the Legislature understood the potential for certain "unfinished business" to simply be dismissed, including revocations which may well have been meritorious, but which simply outlived the administrative process in place to handle them. A case on remand following appeal is no more or less "unfinished" than the cases the Legislature expressly authorized to be dismissed if pending before the OAH at the time of its dissolution.

The majority's reluctance to dismiss what it believes to be meritorious DUI revocations is understandable, but this reluctance does not grant it authority to fact-find and adjudicate these matters. The majority pretends that a credibility determination was made on a disputed material issue—all without evidence that the dispute was even recognized or considered by the OAH. It then cobbles together disputed "facts" that similarly fail to acknowledge respondent's countervailing testimony to make a factual determination that does not exist in the record and this Court simply is not authorized to make. Accordingly, I respectfully dissent.